𝕴𝖓 𝖙𝖍𝖊 𝕯𝖎𝖘𝖙𝖗𝖎𝖈𝖙 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝖙𝖍𝖊 𝖀𝖓𝖎𝖙𝖊𝖉 𝕾𝖙𝖆𝖙𝖊𝖘
𝕱𝖔𝖗 𝕿𝖍𝖊 𝕯𝖎𝖘𝖙𝖗𝖎𝖈𝖙 𝖔𝖋 𝕾𝖔𝖚𝖙𝖍 𝕮𝖆𝖗𝖔𝖑𝖎𝖓𝖆
BEAUFORT DIVISION

RECEIVED
USDC CLERK, CHARLESTON, SC
2005 NOV 30 P 2: 21

| | |
|---|---|
| ANNIE L. ALFORD, | ) Civil Action No. 9:04-23335-HFF-GCK |
| Plaintiff, | ) |
| vs. | ) **REPORT AND RECOMMENDATION** |
| | ) **OF THE MAGISTRATE JUDGE** |
| JO ANNE B. BARNHART, | ) |
| Commissioner of Social Security, | ) |
| Defendant. | ) |

## I. INTRODUCTION

This case is before the Court pursuant to Local Civil Rule 83.VII.02, D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code Section 636(c). The plaintiff, Annie L. Alford (the "Plaintiff" or "Claimant"), brought this action pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433.[1]

## II. BACKGROUND TO THE CLAIM

Plaintiff was born on February 23, 1948, and holds a Bachelor's degree and a Masters degree in early childhood education, plus thirty (30) hours of study. (Tr. 74, 27) She has

---

[1] The Social Security Disability Insurance Program, established by Title II of the Act as amended, 42 U.S.C. § 401 *et seq.*, provides Disability Insurance Benefits ("DIB") to disabled persons who have contributed to the program while employed. The regulations for determining disability are set forth at 20 C.F.R. pt. 404.

twenty-five years' past work experience as a second-grade teacher in the Horry County public school system. (Tr. 27, 29) She alleges disability since May 4, 2001, the day that a second grade student kicked a soccer ball into her abdomen, causing injury to her groin, and anxiety and depression. (Tr. 18-19, 29, 39)

### III. ADMINISTRATIVE PROCEEDINGS

Plaintiff filed an application for DIB on July 22, 2002, alleging disability since May 4, 2001, due to anxiety, depression, and hypertension. (Tr. 16, 74, 86) Plaintiff's application was denied initially and upon reconsideration by the Social Security Administration. (Tr. 54-59, 62-64) On March 20, 2003, Plaintiff filed a request for a hearing. (Tr. 65)

On August 27, 2003, a hearing was held before Administrative Law Judge Richard L. Vogel (the "ALJ"), in Myrtle Beach, South Carolina. Plaintiff was represented by Hardwick Stuart, Jr., Esquire.[2] Plaintiff, and her husband, James B. Alford, testified at the hearing. The ALJ also heard testimony from a vocational expert, James Burge (the "VE"). (Tr. 21-53)

The ALJ considered the case *de novo*, and on February 20, 2004, found that Plaintiff was not under a disability as defined in the Social Security Act, as amended, and that Plaintiff retained the residual functional capacity ("RFC") to perform simple, repetitive one to two step tasks in a low stress environment with no exposure to the general public and less than constant exposure to supervision. (Tr. 16-23) The ALJ determined that Plaintiff was capable of work at the medium exertional level, was able to make a vocational adjustment to other work, and was capable of performing work as a cleaner of commercial buildings. (Tr. 21-22)

---

[2] At the time of the hearing, Plaintiff was 55 years old, and had taken a disability retirement from the South Carolina Retirement Systems due to her anxiety and depression. (Tr. 27, 38, 78)

On April 16, 2004, Plaintiff requested review by the Appeals Council. On October 21, 2004, the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner of Social Security.[3] Thus, Plaintiff exhausted her administrative remedies prior to filing her complaint on December 20, 2004. The parties have briefed the case, and it is now ripe for judicial review under § 205(g) of the Act, 42 U.S.C. § 405(g).

## IV. COMMISSIONER'S FINDINGS

In making her determination that the Plaintiff was not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

1. The claimant meets the non-disability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant's post traumatic stress disorder and chronic adjustment disorder are considered "severe" based on the requirements in the Regulations (20 C.F.R. § 404.1520(c)).

4. These medically determinable impairment do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

6. The claimant has the functional capacity for simple, repetitive one to two step tasks in a low stress environment with no exposure to the general public and less than constant exposure to supervision. The claimant has no exertional limitations.

7. The claimant is unable to perform any of her past relevant work. (20 C.F.R. § 404.1565).

8. The claimant is of "advanced age" (20 C.F.R. § 404.1563).

---

[3] Plaintiff's request for review is listed by the Plaintiff and by the Commissioner as set forth on pp. 5-7 of the transcript. See Plaintiff's Brief at p. 2 and Commissioner's Brief at p. 1. However, the transcript provided to the undersigned United States Magistrate Judge is missing pages 5-12.

Page 3 of 18

9.  The claimant has "more than a high school (or high school equivalent) education" (20 C.F.R. § 404.1564).

10. The claimant has no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case (20 C.F.R. § 404.1568).

11. Considering the types of work that the claimant is still functionally capable of performing in combination with the claimant's age, education and work experience, she could be expected to make a vocational adjustment to work that exists in significant numbers in the national economy. Examples of such jobs include work as [a] cleaner of commercial buildings (1,000 jobs region-wide, 18,000 jobs state-wide, and 609,000 jobs nation-wide).

12. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR § 404.1520(f)), Medical Vocational Rule 203.15.

13. The claimant is capable of medium exertional level work with non-exertional limitations. (Tr. 22-23)

## V. SCOPE OF REVIEW

Under the Social Security Act, 42 U.S.C. § 405(g), this Court's scope of review of the Commissioner's final decision is limited to: (1) whether the decision of the Commissioner is supported by substantial evidence, and (2) whether the Commissioner applied the correct legal standards. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Pass v. Chater, 65 F.3d 1200 (4th Cir. 1995); Mickles v. Shalala, 29 F.3d 918 (4th Cir. 1994); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).



The Court's scope of review is specific and narrow. It does not conduct a *de novo* review of the evidence, and the Commissioner's finding of non-disability is to be upheld, even if the Court disagrees, so long as it is supported by substantial evidence. 42 U.S.C. § 405(g); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Teague v. Califano, 560 F.2d 615, 618 (4th Cir. 1977). Such evidence "consists of more than a mere

scintilla of evidence but may be somewhat less than a preponderance." Shivey v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). Such evidence is generally equated with the amount of evidence necessary to avoid a directed verdict. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). It is the duty of the ALJ reviewing the case, and not the duty of the Court, to make findings of fact and resolve conflicts in the evidence. Hays, 907 F.2d at 1456. In reviewing for substantial evidence, the court does not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the agency. Craig, 76 F.3d at 589. If substantial evidence supports the Commissioner's decision that a claimant is not disabled, the decision must be affirmed. Blalock, 483 F.2d at 775.



Nevertheless, this deferential standard of review does not mean that "the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." Flack v. Cohen, 413 F2d. 278, 279 (4th Cir. 1969). The court also must determine whether the Commissioner's decision complies with applicable law. Myers v. Califano, 611 F.2d 980 (4th Cir. 1982). Therefore, "the courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Agency's] findings, and that [the] conclusion is rational. Vitek v. Finch, 438 F.2d 1157, 1157-1158 (4th Cir. 1971) (citations omitted). "A factual finding by an ALJ is not binding if it has been reached by means of an improper standard or misapplication of the law." Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). "Where the [Commissioner's] determination is in clear disregard of the

overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing'" pursuant to Section 405(g). <u>Vitek</u>, 438 F.2d at 1158 (citations omitted); <u>see also</u> <u>Melkonyan v. Sullivan</u>, 501 U.S. 89, 98 (1991).

## VI.  THE APPLICABLE LAW AND REGULATIONS

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are "under a disability." 42 U.S.C. § 423(a). Disability is defined in 42 U.S.C. § 423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can expected to result in death or which has lasted or can be expected to last for at least 12 continuous months.

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions that are to be asked during the course of a disability determination. 20 C.F.R. §§ 404.1520, 1520a (2004); <u>Heckler v. Campbell</u>, 461 U.S. 458 (1983); <u>Mastro v. Apfel</u>, 270 F.3d 171, 177 (4th Cir. 2001); <u>Hall v. Harris</u>, 658 F.2d 260 (4th Cir. 1981). The five questions are:



(1) whether the claimant is engaged in substantial gainful activity as defined in Sections 404.1510, 404.1571 *et seq*. If such determination is affirmative, no disability will be found. 20 C.F.R. § 404.1520.

(2) whether the claimant's impairments meet the durational requirement (Section 404.1509), and are severe (Section 404.1520(c)). If they do not meet those requirements, no disability will be found. 20 C.F.R. §§ 404.1509, 404.1520(c).

(3) whether the claimant has an impairment which meets or medically equals a condition contained within the Social Security Administration's official listing of impairments (at 20 C.F.R. Pt. 404, Subpart P, App. 1) (the "Listing of Impairments") 20 C.F.R. § 404.1520(d). If one of the listings is met, disability will be found without consideration of age, education or work experience. 20 C.F.R. § 404.1520(d).

(4) whether the claimant has an impairment which prevents past relevant work. 20 C.F.R. § 404.1520(e).

(5) whether, in light of vocational factors such as age, education, work experience and RFC, the claimant is capable of other work in the national economy. The claimant is entitled to disability only if the answer is "no." 20 C.F.R.§ 404.1520(f).

An individual may be determined not disabled at any step if found to be: gainfully employed, not severely impaired, not impaired under the Listing of Impairments (20 C.F.R. Pt. 404, Subpart P, App. 1), or capable of returning to former work. In such a case, further inquiry is unnecessary. If, however, the claimant makes a showing at Step Four that return to past relevant work is not possible, the burden shifts to the Commissioner to come forward with evidence that the claimant can perform alternative work and that such work exists in the national economy. Hall, 658 F.2d 260; English v. Shalala, 10 F.3d 1080 (4th Cir. 1993); Harper v. Bowen, 854 F.2d 678 (4th Cir. 1988); Coffman v. Bowen, 829 F.2d 514 (4th Cir. 1987). The Commissioner may meet this burden by relying on the Medical-Vocational Guidelines (the "Grids") or by calling a vocational expert to testify. 20 C.F.R. § 404.1566. The Commissioner must prove both the claimant's capacity and the job's existence. Grant v. Schweiker, 699 F.2d 189, 191 (4th Cir.1983).



## VII. ANALYSIS OF THE ALJ'S DECISION

Consistent with the five step "sequential evaluation" for the adjudication of disability claims, the ALJ first found that the Plaintiff had not engaged in substantial gainful activity since her alleged onset date. (Tr. 22, Finding 2) With respect to Steps Two and Three, the ALJ determined that Plaintiff's post traumatic stress disorder ("PTSD")and chronic adjustment disorder were impairments considered to be "severe" based upon the requirements in the Regulations,[4] but this medically determinable impairment did not meet or medically equal, either singly or in combination, the criteria of any impairment listed in 20 C.F.R. Pt. 404, Appendix 1, Subpart P, Regulations No. 4, the so-called "Listing of Impairments." (Tr. 18, 22, Findings 3-4); *see* 20 C.F.R. §§ 404.1520(d). The ALJ also found that Plaintiff's allegations regarding her limitations were not totally credible. (Tr. 22, Finding 5)

Proceeding to Step Four of the evaluation process, the ALJ found that Plaintiff lacked the residual functional capacity ("RFC") to perform her past relevant work. (Tr. 22, Finding 7) The ALJ also determined that Plaintiff was capable of work at the medium exertional level (Tr. 20) but then considered Plaintiff's non-exertional limitations. As the ALJ explained: "These extensive non-exertional limitations [simple, repetitive one to two step tasks in a low stress environment with no exposure to the general public and less than constant exposure to supervision (Tr. 22, Finding 6)]are designed specifically to accommodate all residual problems that the claimant may have from the incident at school, giving her the benefit of the doubt, and, consequently, were constructed liberally in her favor. (Tr. 20)

---

[4]     An impairment is considered "severe" when it "significantly limits an individual's physical or mental abilities to do basic work activities." 20 C.F.R. § 404.1520(c); Social Security Ruling 96-3p.

Because the ALJ concluded that Plaintiff could not return to her past relevant work because of her non-exertional limitations, at Step Five the burden shifted to the Commissioner to come forward with evidence that the Plaintiff, considering her age, education, work experience, skills, and physical limitations, had the capacity to perform an alternative job, and that this type of job existed in significant numbers in the national economy.  Hall v. Harris, 658 F.2d 260 (4th Cir. 1981).  The Commissioner can meet this burden by proper reference to the Medical-Vocational Guidelines, also known as the "Grids".  See 20 C.F.R., Part 404, Subpt. P, App. 2.  However, the Grids do not apply to a claimant who suffers from significant non-exertional limitations, or who cannot perform the full range of work activity within a grid category.  Walker v. Bowen, 889 F.2d 47 (4th Cir. 1989).  In those cases, such as the one presently before the Court, the Commissioner must produce a VE to testify that the particular claimant retains the ability to perform specific jobs which exist in the national economy.  Grant v. Schweiker, 699 F.2d 189 (4th Cir. 1983).

Thus, at Step Five of the evaluation, the ALJ posed one hypothetical question to the VE, and elicited testimony from him to determine that there existed a significant number of jobs of that type within the regional or national economy that Plaintiff could perform, such as a commercial building cleaner.  (Tr. 22, Finding 11).  Accordingly, the ALJ concluded that Plaintiff was not under a disability as defined in the Social Security Act.

## VIII.  PLAINTIFF'S OBJECTIONS

Plaintiff's allegations of error are as follows:

1. The ALJ inappropriately relied on the flawed first hypothetical question to vocational expert James Burge, but ignored the favorable second hypothetical to the same expert.

2. The ALJ ignored or improperly abstracted evidence as to Plaintiff's activities to conclude that Plaintiff was not credible with regard to her allegations of depression, fatigue and limited functional capacity.

3.      The ALJ erred by failing to apply the seven factors in Social Security Ruling 96-7p to assess Plaintiff's credibility and the credibility of Plaintiff's husband.[5]

## IX. DISCUSSION

**1.      The ALJ inappropriately relied on the flawed first hypothetical question to vocational expert James Burge, but ignored the favorable second hypothetical to the same expert.**

The transcript of the hearing indicates that the ALJ asked the VE, Mr. Burge, the following hypothetical question:

Q.      I assume that there would be transferable skills. But in this case I'm going to limit the hypothetical to unskilled work, so we need not get into transferability for this lady. Mr. Burge, please assume a hypothetical individual the same age as the Claimant with the same educational and work history retaining the exertional capacity for medium work with the following additional limitations: No exposure to hazards. . . . Simple repetitive one and two-step tasks in a low stress environment with no exposure to the general public and less then [sic] constant exposure to supervisors. In your opinion, Mr. Burge, could that hypothetical individual work at the medium exertional level today on a full-time basis at unskilled work? . . .

A.      There are jobs . . . that relate to the hypothetical. These are medium and unskilled. Cleaners, for example. Cleaning in commercial buildings, that sort of thing [mainly at night when the building's occupants are not there]. (Tr. 51-52)



Plaintiff argues that the ALJ's first hypothetical question to the VE was "flawed" because it did not include all of Plaintiff's alleged limitations. Plaintiff appears to contend that because the ALJ's failed to consider and include the combined effects of the physical limitations caused by depression, anxiety and fatigue in the hypothetical posed to the VE, the VE's response to the hypothetical does not constitute substantial evidence upon which the ALJ could rely in concluding that Plaintiff could perform unskilled work.[6] A fair reading of the hypothetical question, however, reveals that the ALJ's hypothetical was <u>not</u> flawed, because it specifically accounted for Plaintiff's subjective complaints of forgetfulness, problems concentrating, feelings of depression and anxiety by specifying to the VE the requirements that Plaintiff have a simple, repetitive one or

---

[5]    *See* Plaintiff's Brief at p. 1.

[6]    *See* Plaintiff's Brief at pp. 14-15.

two step tasks in a low stress environment with no exposure to the general public and less than constant exposure to supervision. Indeed, the ALJ stated in his decision that he was "giving her the benefit of the doubt" by tailoring the job parameters to Plaintiff's subjective complaints. (Tr. 20) Thus, the undersigned concludes that the hypothetical question was not flawed. To the contrary, the ALJ's hypothetical was based upon consideration of all the evidence of record and accurately set out all of the limitations the ALJ accepted. Furthermore, the VE was present throughout the hearing and heard the Plaintiff's testimony. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989).

Next, Plaintiff argues that the VE's response to the second hypothetical question, which was posed by Plaintiff's attorney, was "ignored" by the ALJ. The question at issue is as follows:

> Q: Let me ask you to also assume that the complaints that you heard from [Plaintiff] today are in fact credible. Is there any work that she can perform on a regular full-time basis?
> A: No.

As discussed more fully below, the ALJ is not required to accept a claimant's subjective complaints without question. See Craig v. Chater, 76 F.3d 585, 591 (4th Cir. 1996). Indeed, the issue of credibility is a determination reserved to the Commissioner. Further, the ALJ was not bound to consider the VE's response to a question posed by Plaintiff's attorney which set forth limitations which were not consistent with the conclusions reached by the ALJ based on the record as a whole. See, e.g., Lee v. Sullivan, 945 F.2d 687, 692 (4th Cir. 1991) (noting that a requirement introduced by the claimant's attorney in a question to the vocational expert "was not sustained by the evidence, and the vocational expert's testimony in response to the question was without support in the record"). In conclusion, the ALJ did not err by relying upon the VE's



Page 11 of 18

response to the hypothetical question he posed; likewise, the ALJ did not err in disregarding the VE's response to the Plaintiff's attorney's hypothetical question.

> 2.  **The ALJ ignored or improperly abstracted evidence as to [Plaintiff's] activities to conclude that Plaintiff was not credible with regard to her allegations of depression, fatigue and limited functional capacity.**

By Brief, Plaintiff argues that the "ALJ failed to consider the combined effects of the physical limitations caused by the depression, anxiety and fatigue."[7] The Commissioner acknowledges that her regulations provide that in determining whether a claimant's impairment or impairments are of such severity that such impairment or impairments could be the basis of eligibility for benefits, she will consider the combined effect of all the claimant's impairments without regard to whether any such impairment, if considered separately, would be of such sufficient severity. *See* 20 C.F.R. § 404.1523 (2004). If a medically severe combination of impairments is found, the combined impact of the impairments will be considered throughout the disability determination process. *See id.* If the Commissioner does not find a medically severe combination of impairments, it will be determined that the claimant is not disabled. *See id.* In the present case, the Commissioner correctly determined that Plaintiff did not have any impairment or impairments which, either singly or in combination, prevented Plaintiff from performing other work in the national economy. (Tr. 22)

In reaching the conclusion that Plaintiff was not disabled, the ALJ took into account Plaintiff's subjective complaints, but determined that Plaintiff's allegations regarding her limitations were not totally credible. In determining the credibility of Plaintiff's subjective complaints, the ALJ could consider all of the evidence, medical and nonmedical. Craig, 76 F.3d

---

[7]   *See* Plaintiff's Brief at p. 10.

at 595; *see also* Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994); Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986); 20 C.F.R. § 404.1529. With respect to Plaintiff's physical injury, her medical records indicate that after Plaintiff was struck by the soccer ball, she was treated conservatively with rest and medication. (Tr. 156) Dr. Harkins concluded that Plaintiff's abdominal injury had significantly improved or resolved (Tr. 168, 170-171), and released her from Workers Compensation a month later, on June 4, 2001. (Tr. 170) Plaintiff's consultative psychiatrist, Dr. Laura Rames, concluded that Plaintiff's abdominal trauma and associated pain disorder were resolved (Tr. 142), that she had a heightened somatic focus on the pain from the injury, which led to a significant medical evaluation, and which was in excess of what physical findings on medical examination would indicate (Tr. 142), and that Plaintiff no longer had significant physical impairment due to the injury. (Tr. 143) Indeed, Plaintiff reported experiencing decreased groin pain. (Tr. 168, 171) Of course, if a physical impairment can be controlled by treatment or medication, it cannot be considered disabling. *See* Gross v Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986); 20 C.F.R. § 404.1530 (2004). It follows, then, that if Plaintiff no longer had an impairment due to an injury that had resolved, the impairment cannot be considered disabling.

With respect to Plaintiff's emotional status, the record reflects that Plaintiff demonstrated improvement with treatment (Tr. 116-117, 141-142, 244, 256, 260, 262, 264, 300), including decreased anxiety (Tr. 159-160, 163, 168, 303), lessened fatigue (Tr. 163), improved sleep (Tr. 159-160, 163, 198, 303), improved concentration (Tr. 160), and improved mood (Tr. 167), without adverse medication side effects (Tr. 91, 163, 307). She reported feeling "lighter" (Tr. 168), and "[feeling] better" (Tr. 200), and having fewer crying spells. (Tr. 159-160, 163-164,

167-168, 303) Dr. Harkins determined that Plaintiff demonstrated significant symptomatic improvement in anxiety and depression (Tr. 159, 164, 168), and that her anxiety and depression were stable with treatment (Tr. 160-161, 163, 302-303). Similarly, Dr. Rames determined Plaintiff had partial response to her medication regime, that her depression was in partial remission, that she no longer had significant psychological impairment due to the abdominal injury, and that she was expected to respond to more aggressive treatment for depression, which was highly likely to fully resolve with proper treatment and did not represent a permanent impairment. (Tr. 142-143)

Although this evidence was not determinative on the issue of disability, in conjunction with the other evidence of record, it provided significant support for discounting Plaintiff's subjective complaints. *See* Gross 785 F.2d at 1165-66 ("a psychological disorder is not necessarily disabling. There must be a showing of related functional loss."); Craig, 76 F.3d at 594 (noting credibility evaluation process and factors to be considered, including evidence of a claimant's activities). The ALJ, based on the substantial evidence before him, concluded that Plaintiff's mental impairments imposed only mild restrictions on her activities of daily living; moderate difficulties in maintaining social functioning and deficiencies of concentration, persistence, or pace; and no repeated episodes of decompensation of extended duration. (Tr. 18)

Significantly, Dr. Rames opined in December 2001 (seven months after the accident) that Plaintiff could return to part-time teaching under a different school principal and eventually could return to teaching full-time, under a different school principal. (Tr. 143) Given this record, there was substantial evidence for the ALJ to conclude that Plaintiff's allegations regarding her limitations were not totally credible, because Plaintiff reported to Dr. Rames that she felt "some

better" since beginning counseling and medication. Dr. Rames opined that Plaintiff felt stress due to interactions with the school principal which had occurred both before and after the soccer ball incident. (Tr. 142) Dr. Rames noted that Plaintiff could transfer to another school to avoid the principal, but Plaintiff did not want to leave her teacher friends and familiar surroundings. (Tr. 141) Although disability determinations are medical assessments, the Commissioner may rely on the claimant's own statements of limitation in evaluating a claim of disability.

Furthermore, the ALJ observed that Plaintiff was non-compliant with treatment in the following ways: failing to consistently obtain prescribed medications from April 2001 to July 2002, without explanation (Tr. 19-20, 117, 245); failing to begin prescribed antidepressant medications (Tr. 164); and failing to bring a family member to a counseling session as requested (Tr. 117). Plaintiff's treating counselor was concerned about the possibility of secondary gain issues because Plaintiff had reported decreased daily activities, despite being awarded Workers Compensation benefits and not returning to her previous position as a teacher. (Tr. 117) In evaluating the credibility of a Social Security disability claimant's subjective complaints, an ALJ is not precluded from considering whether the claimant complied with her prescribed treatment. See Holley v. Massanari, 253 F.3d 1088, 1892 (8th Cir. 2001).

The ALJ must make credibility determinations based upon all the evidence in the record, and properly supported credibility determinations will be upheld. See Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir. 1985). In sum, this court finds that the ALJ conducted a proper analysis of Plaintiff's credibility.

3.  **The ALJ erred by failing to apply the seven factors in Social Security Ruling 96-7p to assess Plaintiff's credibility and the credibility of Plaintiff's husband.**[8]

Although Plaintiff's credibility has been extensively discussed above, Plaintiff's final allegation of error alleges that the ALJ failed to properly apply Social Security Ruling No. 96-7p, which sets forth the proper means of assessing a claimant's credibility in disability claims. SSR No. 96-7p states in part:

> Because symptoms, such as pain, sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, the adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements if a disability determination or decision that is fully favorable to the individual cannot be made solely on the basis of objective medical evidence.
> In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record. An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.
> It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.
> When additional information is needed to assess the credibility of the individual's statements about symptoms and their effects, the adjudicator must make every reasonable effort to obtain available information that could shed light on the credibility of the individual's statements. In recognition of the fact that an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, 20 C.F.R. §§ 404.1529(c) and 416.929(c) describe the kinds of evidence, including the factors below, that the adjudicator must consider in addition to the objective medical evidence when assessing the credibility of an individual's statements:
> 1. The individual's daily activities;
> 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
> 3. Factors that precipitate and aggravate the symptoms;
> 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
> 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;



---

[8]  See Plaintiff's Brief at p. 1.

6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. SSR No. 96-7p.

In the present case, the ALJ specifically stated that he evaluated Plaintiff's symptoms in accordance with 20 C.F.R. § 404.1529, and Social Security Rulings 96-3p, 96-4p, and 96-7p. As the ALJ noted:

> [T]he evidence does not support the claimant's allegations of the intensity and persistence of [her] pain and other symptoms. Specifically, the claimant consistently reports improvement with therapy. Increasing depressive symptoms seem to coincide with reports of non-compliance. No extensive treatment for any physical impairment is in [the][ record. Additionally, no mental health treatment notes for 2003 are in [the] record. The notes from 2002 indicate that while depressive symptoms were never fully resolved, with therapy and medication, symptoms are kept at a 'tolerable baseline'. Finally, no physician has ever indicated total disability due to any mental impairment. To the contrary, Dr. Rames, seven months after the incident, was of the opinion that she could even then return to part time teaching under a different principal. (Tr. 20)

Thus, contrary to Plaintiff's allegation, the ALJ did apply the factors listed in 97-7p to the Plaintiff.[9] As noted above, judicial review under 42 U.S.C. §405(g) is not a *de novo* examination of the factual record. The ALJ, rather than this court, has the advantage of live testimony from witnesses. This permits weighing of evidence, assessment of credibility and resolution of conflicts in testimony which this court is in no position to accomplish. After the ALJ decision and Appeals Council consideration, the sole function of this court is to determine whether or not substantial evidence supports the conclusion. Even if this court should disagree with the Commissioner's conclusion, the weighing of evidence has already been done, and the decision must be upheld if it is supported by substantial evidence. Here, the ALJ's credibility

---

[9] See Plaintiff's Brief at 1.

determination is supported by substantial evidence. This court further finds no legal error in the ALJ's determination.

Finally, the absence of express findings regarding the testimony of Plaintiff's spouse was not reversible error. The ALJ took testimony from the spouse, and in light of the substantial evidence of record, it is not reversible error that the ALJ failed to specifically refer to that testimony in his decision. Taking the record as a whole, the court finds that substantial evidence supports the ALJ's decision, and the court will not disturb such finding on appeal. Accordingly, this Court recommends that the Commissioner's decision be affirmed.

## RECOMMENDATION

Based upon the foregoing, it is recommended that the Commissioner's decision **be affirmed.**

George C. Kosko
United States Magistrate Judge

November 30, 2005
Charleston, South Carolina